Argued April 2, affirmed July 3, 1968

STATE OF OREGON, *Respondent, v.*
GENE RODERICK, *Appellant.*
(Case No. C-44181)

443 P. 2d 167

*Gary D. Babcock,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Lawrence A. Aschenbrenner, Public Defender, Salem.

*Jacob B. Tanzer,* Assistant Chief Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

PERRY, C. J.

The defendant Gene Roderick was previously convicted of the crime of armed robbery and on appeal we reversed for a new trial. *State v. Roderick,* 243 Or 105, 438, 412 P2d 17.

The defendant was again tried and now appeals from this subsequent judgment of conviction.

On the first appeal we held that a .45 automatic pistol and clip taken from the automobile in which defendant was riding was erroneously admitted into evidence. The basis of that opinion was that the search and seizure of the pistol and clip was made during an unlawful arrest. We pointed out that the evidence offered to justify an arrest under ORS 133.310(4) failed to disclose that the Portland police officers making the arrest had been notified that a *felony warrant* had been issued in the state of Idaho for the defendant's arrest.

The facts now before this court disclose that prior to defendant's arrest in Multnomah county he had been identified as the armed robber who held up the complaining witness on September 16, 1964. On September 17, 1964, the Portland City Police Department telephoned the Identification Bureau of the Idaho State Police at Boise, Idaho, and inquired if there was a felony warrant outstanding for the defendant in

Idaho. A woman answered the telephone and advised that the department had outstanding "wants" from the sheriff's office in Layton County, Idaho. She was, however, asked by the Portland police to check with the sheriff of Layton county and to then inform the Portland police whether or not there was an outstanding felony warrant for defendant's arrest in Layton county. The woman called back and advised the Portland police that there was such an outstanding felony warrant for the arrest of the defendant. Later that day the police officers observed defendant riding in the center of the front seat of an automobile with two other persons, both ex-convicts. The officers stopped the car and advised the defendant he was under arrest for the crime committed in Idaho.

After the defendant and his companions were out of the automobile, an immediate search of the vehicle revealed a .45 caliber automatic pistol under the front seat. The officer who made the search testified that he knew the two men with the defendant were ex-convicts; also, that he was investigating an armed robbery that had occurred the night before, and that the victim had identified the defendant as the robber and had described the weapon as a .45 automatic.

The defendant again contends that the same evidence should have been suppressed in this trial because there was not a valid arrest under the provisions of ORS 133.310 which reads as follows:

"A peace officer may arrest a person without a warrant:

&ast; &ast; &ast;

"(4) When he is notified by telegraph, telephone, radio or other mode of communication by another peace officer of any state that such peace officer holds in his hands a duly issued warrant

for the arrest of such person charged with a crime committed within his jurisdiction."

Defendant argues that, although the words of the statute—"holds in his hands a duly issued warrant"— should not be given a literal interpretation, the balance of the statute requires that the peace officer having under his control the valid warrant must notify the out of state peace officer of that fact, and that notification by an unidentified woman employee of the Identification Bureau of the Idaho State Police in Boise does not constitute notification by "such peace officer" having possession of the "duly issued warrant."

Therefore, it would appear that defendant argues that a literal application of the statute demands that a peace officer in this state must be notified personally by a police officer of another state holding the warrant.

Considering that the purpose of the statute is to cooperate with and assist other states in the swift apprehension and arrest of wanted criminals, we are of the opinion that the legislature did not intend such a restricted construction of the statute. The purpose of the words "by another peace officer of any state that such peace officer holds in his hands a duly issued warrant" is to reasonably insure that peace officers of this state will not arrest on mere suspicion, but must have reasonable and presumably verifiable grounds that a warrant has in fact been issued before making an arrest.

We must assume that the legislature was conversant with police practices in this area of law enforcement, and that radio broadcasts, telegrams and telephone calls would not in all instances be sent by the holder of the warrant of arrest, but by someone authorized

by him to perform such duties, whether a peace officer or a secretary in the office.

That the legislature did not intend the construction urged by the defendant is disclosed in the use of the words "or other mode of communication." Probably the most used means of communication in early times was accomplished by giving an oral message to a messenger to deliver to another person.

The facts as set out disclose that the Portland police requested from the officer who had possession of the warrant verification of the fact that he had a valid warrant in his possession. The fact that the verification of this fact came through another person, who the Portland police had every reason to believe was reliable, is as much a communication within the terms of the statute as a telegram sent through an agent of the telegraph company.

■ To hold that the statute requires that the information received by a peace officer in this state must come directly from the peace officer himself and not from someone reliably believed to be his agent, is not only absurd, but would infringe upon the purpose for which the statute was enacted.

The defendant also argues that since the officers had no search warrant the search of the automobile for the pistol was an unlawful search and seizure.

■■ There is no merit in this contention. If the arrest was proper, the search of the car for weapons was reasonable. An officer is justified for his own protection in searching both the person and automobile in which the person was riding. *State v. Riley*, 240 Or 521, 402 P2d 741.

The judgment is affirmed.